## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Application of Clifford Cheah King Mun and Maso Capital Investments Limited for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | No. 22-mc-243-MN-JLH |

### MEMORANDUM ORDER[1]

Petitioners Clifford Cheah King Mun and Maso Capital Investments Limited filed an Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. (D.I. 1 ("Application").) Petitioners are parties to an appraisal proceeding pending in the Supreme Court of Bermuda. Their Application seeks authorization to issue a subpoena to Respondent Evercore Inc. to obtain documents and a deposition for use in the Bermuda proceeding. (D.I. 3, Ex. 1 (proposed subpoena).)

With the parties' consent, the Court permitted Jardine Strategic Limited—Petitioners' adversary in the Bermuda appraisal action and the entity that survived the transaction at issue—to

---

[1] The Third Circuit has not decided whether a magistrate judge's decision on a § 1782 application is "dispositive"—meaning that it should be issued as a "Report and Recommendation" to the district judge and reviewed *de novo*, see 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. Proc. 72(b)—or "nondispositive"—meaning that it may be ordered by the magistrate judge and may be reconsidered by the district judge only when it is clearly erroneous or contrary to law. *See Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 396 n.6 (3d Cir. 2021).
It is not for me to opine on how this ruling should be reviewed. I note that the Third Circuit treats rulings on administrative subpoenas as dispositive, *see NLRB v. Frazier*, 966 F.2d 812, 815–18 (3d Cir. 1992), and there might not be a principled basis to distinguish § 1782 petitions from administrative subpoena enforcement proceedings. That said, the Third Circuit recently acknowledged that "the majority of district courts to consider [the] question have determined § 1782 orders are non-dispositive." *Arcelik*, 856 F. App'x at 396 n.6. Should Judge Noreika conclude that this issue is dispositive, I offer this as a Report and Recommendation.

intervene as a Respondent.[2]  (D.I. 17, 18.)  The Court subsequently referred the Application to me.  (D.I. 21.)

The Application is fully briefed.  (D.I. 1, 2, 3, 4, 12, 13, 19, 20, 23, 24, 26, 27, 28, 29, 30, 33, 34, 35, 37, 38, 39.)  Having reviewed the parties' numerous submissions, for the reasons set forth below, Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding (D.I. 1) is DENIED.

## I.     BACKGROUND

The Application seeks documents and testimony purportedly for use in a shareholder appraisal proceeding pending in the Supreme Court of Bermuda, in which Petitioners seek a determination of the fair value of their shares in Jardine Strategic Holdings Limited ("Jardine Strategic" or the "Company"), a Bermuda company taken private through an acquisition by its majority shareholder Jardine Matheson Holdings Limited.  Evercore Partners International LLP (aka "Evercore U.K."), a subsidiary of Respondent Evercore Inc., served as a financial advisor to the Transaction Committee of Jardine Strategic's Board of Directors and provided an opinion on the terms of the acquisition.  (D.I. 4 ¶ 5.)  In the Application, Petitioners seek to issue a subpoena to Respondent Evercore Inc. for essentially all documents possessed by Evercore U.K. having any relation to Jardine Strategic.  (D.I. 3, Ex. 1.)  Petitioners also seek a deposition of Evercore Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6).  (*Id.*)

The record before this Court reflects that the Bermuda Court has expended significant resources considering and ruling on the appropriate scope of discovery for the appraisal proceeding pending before it.  The plaintiff shareholders in the appraisal proceeding (which include Petitioners here) submitted to the Bermuda Court a draft case management order (called a "Directions Order")

---

[2] I will hereafter refer to Evercore Inc. and Jardine Strategic Limited as "Respondents."

that would have authorized a list of proposed discovery requests, falling into 38 categories, and also would have authorized "general discovery" of all documents relevant to the determination of the fair value of the shares of the Company.[3]  (D.I. 13 ¶¶ 13–16, Ex. 4 (Bermuda plaintiffs' proposed Directions Order).)  Among other things, the shareholders' proposed Directions Order sought discovery of

> 5.2. Any Communications with and Documents produced by, provided to or received from Evercore Partners International LLP [(Evercore U.K.)] or its affiliates, . . . or any other financial advisor in relation to the amalgamation between the Company and JMH Bermuda Limited (the "Amalgamation") and/or any other restructuring of the Company or its assets and/or any other considered process for the purchase, exchange or transfer of the Company's publicly-held shares and/or relevant to the fair value of the Dissenters' shares as at the Valuation Date and/or the deal process, including but not limited to those passing between them and:
>   5.2.1. the Jardine Strategic Transaction Committee or any member thereof;
>   5.2.2. the Company and/or its directors, management and/or managers, agents, employees, counsel, or advisors;
>   5.2.3. Jardine Matheson Holdings Limited, JMH Investments Limited, or JMH Bermuda Limited or any of their directors, management and/or managers, employees, counsel or advisors (together the "Buyer Group");
>   5.2.4. any other potential purchasers of the Company or of the Company's interests in other companies within the Jardine Group;
>   5.2.5. any other entity within the Jardine Group or any of their/ directors, management and/or managers, employees, counsel, consultants or advisors.

---

[3] The proposed Directions Order, which sought discovery of much of the same material Petitioners seek here, and which was rejected by the Bermuda Court, was conspicuously absent from the 1,500+ pages of documents Petitioners submitted to this Court in connection with their Application.

(D.I. 13, Ex. 4 at 19.) The Company opposed the shareholders' proposed Directions Order and instead proposed, among other things, that (1) the Company be ordered to produce Evercore U.K.'s valuation opinion and the documents supplied to Evercore U.K. by the Company in connection with the valuation opinion and (2) that the scope of further discovery be directed by the parties' respective valuation experts, who would be allowed to make "reasonable written requests" for information for the purpose of preparing their expert reports. (D.I. 13, ¶¶ 18–19, Ex. 5.)

After receiving the competing proposals, the Bermuda Court held a three-day hearing to determine the appropriate scope and process for discovery in its proceeding. At the hearing, Chief Justice Hargun asked counsel for the plaintiff shareholders whether they were "trying to discover whether there is any wrongdoing and the like in the hope that something might turn up." (D.I. 13, Ex. 1 at 60.) The shareholders' counsel replied, "No, no, my Lord, it's not that, . . . I should like to make clear that apart from the fact that there has been a massive spike in the Jardine Matheson share price, I am not alleging wrongdoing, and I think—I tried to be very clear in that—this is not a fishing expedition to see whether the Keswick family have been up to no good. I'm not alleging that for one second. I'm not alleging that for one second." (*Id.* at 61.)

The Bermuda Court ultimately issued a detailed Directions Order, which outlined the scope and procedures for discovery in the appraisal proceeding, and a 36-page opinion (the "Directions Judgment"), which set forth the Bermuda Court's reasoning. In the Directions Judgment, Chief Justice Hargun explained that he was rejecting the plaintiff shareholders' broad approach to discovery. (D.I. 4, Ex. 14 ¶ 81.) After outlining the parties' views and explicating the applicable case law, the Chief Justice emphasized the fact that the plaintiffs were not alleging any wrongdoing. And he went on to explain that "the extent of discovery and implied level of document and data review [proposed by the plaintiff shareholders] is more similar to the scope of

document review and analysis which [we] would expect for a forensic accounting investigation in which there were credible allegations of fraud or accounting misstatements at multiple subsidiary levels within the corporate hierarchy." (*Id.* ¶ 58.) He also expressed concern that the discovery process in appraisal proceedings is "capable of abuse by the dissenting shareholders." (*Id.* ¶ 72.) After describing the plaintiff shareholders' proposed discovery requests, he explained that "large parts of [those requests] . . . are overly broad, unfocused and will produce a massive amount of documentation . . . with little or no relevance to the valuation exercise required to be carried out." (*Id.* ¶ 79.) He accordingly found that "the information sought by the Dissenting Shareholders is highly unlikely to assist a valuer in appraising the value of the Company of this nature in the circumstances." (*Id.* ¶ 80.) Chief Justice Hargun ultimately concluded that the "appropriate approach, in the exceptional circumstances of this case, is that as suggested by the Company." (*Id.* ¶ 81.)

Consistent with the Directions Judgment, the Directions Order entered by the Bermuda Court required the Company to produce "the documents supplied to Evercore Partners LLP [(Evercore U.K.)] for its valuation opinion dated 7 March 2021 (the **Valuation Opinion**), together with the Valuation Opinion"—which represented only a subset of the Evercore-related documents requested by the plaintiff shareholders. (D.I. 4, Ex. 15 ¶ 7.) The Directions Order further directed the parties to engage in an expert-led process for additional discovery, whereby each side's valuation expert could make written requests for relevant information for the purpose of preparing their reports. (*Id.* ¶¶ 1–2, 7.1.)

Pursuant to the process ordered by the Bermuda Court, the Company produced Evercore U.K.'s valuation opinion and the materials provided by Jardine Strategic to Evercore U.K. for that opinion. (D.I. 13 ¶ 28.) The plaintiff shareholders' valuation expert subsequently made two

5

requests for categories of additional documents, including documents concerning Evercore U.K. (D.I. 13, Ex. 6, 7.)

The record before this Court reflects that the Company has produced or is in the process of producing documents responsive to requests from the plaintiffs' expert; the record further reflects that "the Company liaised with Evercore UK to ensure that copies of documents that were in the possession of Evercore UK, but within the power of the Company, were disclosed to ensure that all documents in the possession, custody or power of the Company responsive to the [expert's] Requests relating to Evercore UK were disclosed." (D.I. 13 ¶ 33.) Included in the Company's production are many documents that fall within the categories of documents requested in Petitioner's Application. (*Id.* ¶ 35; D.I. 24 ¶¶ 22–24.)

After the plaintiff shareholders' expert made his second set of requests, but before the Company responded, Petitioners filed their § 1782 Application in this Court. The Application seeks authorization to issue the proposed subpoena set forth at Exhibit 1 to D.I. 3 to Evercore Inc., the U.S. parent of Evercore U.K. The proposed subpoena is very broad: it seeks (among other things) production of essentially all documents relating to the transaction underlying the Bermuda Court's appraisal proceeding.

Because it appeared to this Court that the Bermuda Court had authorized Evercore U.K.-related discovery in the underlying proceeding, and as it appeared that the Company was working with Evercore U.K. to obtain and produce responsive documents in the Company's control, I ordered Petitioners and Respondents to meet and confer regarding the § 1782 Application to see if they could agree upon a path forward. (D.I. 31.) Unfortunately, they couldn't. In the parties' latest joint status report, Petitioners maintain that the Court should grant the Application to authorize their proposed subpoena, including because they want Evercore's own internal

communications and Evercore's communications with third parties (i.e., not the Company). (D.I. 33 at 2.)

## II. LEGAL STANDARD

Section 1782 of Title 28 authorizes a district court, "upon the application of any interested person," to "order" a person "resid[ing]" or "found" in this district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). In accordance with *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the court follows a two-step process to determine whether to grant judicial assistance under 28 U.S.C. § 1782. First, the court analyzes whether § 1782 authorizes the requested discovery. *Id.* at 263–64. If the statutory conditions are satisfied, the court then determines in its discretion whether the requested discovery should be allowed, taking into consideration certain factors identified by the Supreme Court in *Intel*. *Id.* Those factors are "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *In re O'Keeffe*, 646 Fed. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264–65). However, "*Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered. Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022).

### III. DISCUSSION

I will assume without deciding that the § 1782 statutory requirements are satisfied, but I will exercise my discretion to deny the Application.[4] *See In re Letter of Request from SPS Corp I*, No. 21-mc-565, 2022 WL 3908067, at *3 (D. Del. Aug. 30, 2022) ("Since I would deny SPS's application under the discretionary factors, I need not consider whether SPS's application meets § 1782(a)'s statutory requirements.").

The first *Intel* factor asks whether the evidence sought is within the foreign tribunal's jurisdictional reach and thus obtainable without resort to § 1782. *Intel*, 542 U.S. at 264. Respondent Evercore Inc. is not a party to the appraisal proceeding. But much of the evidence sought is obtainable—and indeed has already been obtained—in the Bermuda proceeding. Regardless, I'll assume that Petitioners seek additional evidence beyond the Bermuda Court's jurisdictional reach, and I'll assume that this factor therefore favors Petitioners.[5]

The second *Intel* factor also favors Petitioners. It considers the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to U.S. federal court assistance. *Intel*, 542 U.S. at 264. According to the Third Circuit, the inquiry here is not whether particular evidence would be admissible in the foreign court, but instead more generally whether the foreign court is receptive to U.S. federal court assistance. *In re O'Keefe*, 646 F. App'x at 267. While I have doubts that the Bermuda Court would authorize or approve of

---

[4] In particular, I will assume, without deciding, that the documents and testimony sought are "found" within this district, even though it was Evercore Inc.'s foreign subsidiary, Evercore U.K.—not Respondent Evercore Inc.—that served as the financial advisor to the transaction at issue in the Bermuda proceeding.

[5] Because I conclude that the Application should be denied for other reasons, I am assuming that this factor favors Petitioners notwithstanding Respondents' argument that Petitioners did not ask the Bermuda Court for permission to take third-party discovery "because they know the Bermuda Court would likely deny that request." (D.I. 33 at 6–7.)

the discovery requested by the Application, I can't say on this record that the Bermuda Court would be unreceptive to judicial assistance. Accordingly, I conclude that this factor favors Petitioners.

The third *Intel* factor strongly favors Respondents. It asks whether the § 1782 request conceals an attempt to circumvent the foreign tribunal's proof-gathering restrictions or other policies. *Intel*, 542 U.S. at 265. Under the particular circumstances here, I conclude that the Application represents an attempt to circumvent Chief Justice Hargun's Directions Order and Directions Judgment. Chief Justice Hargun held a three-day hearing on the appropriate scope of discovery. He issued a lengthy Directions Order setting forth how discovery would be conducted and the scope of discovery that would be permitted. The Directions Order specifically describes, among other things, the procedures for the parties' experts to request information needed to form their opinions on valuation. Accompanying his Directions Order was a 36-page Directions Judgment explaining why he concluded that an expert-led discovery process was proportional to the needs of the appraisal case pending before him, which did not include any allegations of fraud.

To the extent that Petitioners' Application requests documents also in the possession or control of the Company that are not already required to be produced in Bermuda, those requests have already been effectively rejected by the Bermuda Court by operation of the Directions Order, which limited the scope of discovery available from the Company. *See, e.g.*, *In re Eli Lilly*, 37 F.4th at 168 (affirming district court's finding that § 1782 application was an attempt to circumvent foreign discovery procedures where the § 1782 requests overlapped significantly with the petitioners' requests in the foreign tribunal); *In re SPS Corp I*, 2022 WL 3908067, at *3 (explaining that the request would be viewed as circumventing the foreign tribunal's proof-gathering restrictions if the foreign tribunal rejected requests for the same documents); *In re Ex Parte*

9

*Application of Eni S.p.A.*, No. 20-mc-334, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021) (same).

Petitioners contend that the Directions Order only applies to the parties to the appraisal proceeding, so it shouldn't be viewed as the Bermuda Court rejecting Petitioners' attempt to obtain discovery from non-party Evercore, including its internal documents and its own communications with other third parties (*i.e.*, not the Company). But even if that were correct—and the Court has its doubts[6]—Petitioners haven't persuasively explained why the result here should be different. The Bermuda Court considered broader discovery requests proposed by the plaintiff shareholders and rejected them on the grounds that (1) they sought information not relevant to the case, and (2) broader discovery was not proportionate under the particular circumstances of the case. Given the Bermuda Court's rationale for rejecting broader discovery from a *party* to the appraisal proceeding, it defies credulity to argue that the Bermuda Court would have concluded that broader discovery from a *non-party* was relevant and proportional to the needs of the case. Thus, while the Directions Order may not have expressly precluded Petitioners from seeking third-party discovery via § 1782, I nevertheless find on this record that the Application is, at the very least, inconsistent with Chief Justice Hargun's orders and, in fact, conceals an attempt to circumvent his orders.

The fourth *Intel* factor also favors Respondents. It examines whether the requests are unduly intrusive or burdensome. *Intel*, 542 U.S. at 265. The Bermuda Court has already ruled

---

[6] Respondents point out that the Directions Order issued by the Bermuda Court does not authorize the parties to take third-party discovery, and that Petitioners have not asked the Bermuda Court for such authorization notwithstanding Judge Hargun's offer to revisit the scope of discovery "[i]n case there is any difficulty in obtaining th[e] information" that the experts "reasonably require to express an opinion as to the fair value of the Dissenting Shareholders' shares in the Company." (D.I. 4, Ex. 14 ¶ 94.)

that an expert-driven discovery process was appropriate for the particular case pending before it and that broader discovery was disproportionate to the needs of the case. Even if it were appropriate for this Court to (in effect) review the Bermuda Court's ruling about the appropriate scope of discovery for its own case, I would not disagree with the Bermuda Court. On this record, I find that the Application—to the extent it requests information not already ordered to be produced in the Bermuda action—contains requests that are unduly intrusive, burdensome, and not relevant to the parties' claims in the Bermuda action, and that the Application amounts to a fishing expedition. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) (holding that a decision to deny a § 1782 application "is fully within the discretion granted the District Court under the Federal Rules of Civil Procedure which are incorporated by reference into 28 U.S.C. § 1782.").

      To be clear, the Court fully understands that § 1782 contains no requirement that the applicant first seek the desired discovery in the foreign forum or first attempt to obtain the information through a letter rogatory. The Court is also aware that it is not required to predict what the Bermuda Court would do with a request for the same discovery sought by the Application. But the Court does have discretion to deny this Application, and the Court concludes on this record that the request for broad discovery from a third party is inappropriate under the particular circumstances of this case.

      Having considered all of the *Intel* factors, the Court exercises its discretion to deny the Application.

## IV.  CONCLUSION

NOW THEREFORE, for the reasons set forth above, it is HEREBY ORDERED that Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding (D.I. 1) is DENIED.

Date: October 26, 2023

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE